IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| ISIAH J. JONES, | ) | |
| | ) | |
| Plaintiff, | ) | 4:05cv3053 |
| | ) | |
| vs. | ) | MEMORANDUM AND ORDER |
| | ) | |
| J. WILLIAM, et al., | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the court on the following pending motions: (1) filing no. 62, the Motion for Temporary Restraining Order ("TRO") filed by the plaintiff, Isiah J. Jones; (2) filing no. 78, the plaintiff's Motion for Preliminary Injunction; (3) filing no. 91, the plaintiff's Motion to Compel, Motion to Join Party, and Application for Authorization to Incur Expense; (4) filing no. 94, the Objection to Motion for Discovery and Motion to Add Party filed by defendants-Frank Hopkins, Fred Britten, Richard Elliot, Randy Kohl, and Steve Lemar, in their official capacities; (5) filing no. 96, the Motion for Summary Judgment filed by defendants-Hopkins, Britten, Elliot, Kohl and Lemar; (6) filing no. 99, the plaintiff's Motion to Continue Defendants' Motion for Summary Judgment; (7) filing no. 102, the Motion for Summary Judgment filed by defendants-Janssen Williams, M.D., Kris Galatis and Dave Thomas; and (8) filing no. 107, the plaintiff's Motion for Extension of Time to File Opposition to [filing no. 102, Motion for] Summary Judgment.  The plaintiff began this litigation as a prisoner incarcerated at the Tecumseh State Correctional Institution ("TSCI"). However, on April 18, 2006, he transferred to the Nebraska State Penitentiary ("NSP"). Both TSCI and NSP are institutions within the Nebraska Department of Correctional Services ("DCS"). This case concerns the plaintiff's medical treatment while in DCS custody.

Defendants-Frank Hopkins, Fred Britten, Richard Elliot, Randy Kohl, and Steve Lemar are, or were, employees of DCS (collectively "DCS defendants").  Dr. Randy Kohl has been employed as the Medical Director of DCS since October of 2001; Hopkins serves as the DCS Assistant Director of Institutions.   Britten is the Facility Administrator at TSCI.

1

Dr. Richard Elliott retired on July 18, 2005, from his position as a physician at DCS. Physician's assistant Steve Lemar also has left DCS.

From December of 2001 through August 31, 2005, DCS employed a firm, Correctional Medical Service ("CMS"), to provide medical care to inmates at TSCI. From September 1, 2005 through the present, Correct Care Solutions ("CCS") has replaced CMS, under contract with DCS, as the provider of medical services to TSCI inmates. Dr. Janssen Williams, as a staff member of CMS and now of CCS, has been the treating physician for inmates at TSCI during the period relevant to this litigation. Kris Galatis is Dr. Williams' physician's assistant. Dave Thomas has the title of Health Service Administrator at TSCI; he is not a physician and does not treat inmates.

As health care providers under contract with DCS to treat prisoners, the employees of CMS and CCS were and are "state actors," i.e., persons acting "under color of state law," for purposes of prisoner claims pursuant to 42 U.S.C. § 1983. See, e.g., West v. Atkins, 487 U.S. 42, 49-56 (1988) ("state employment is generally sufficient to render the defendant a state actor"); Walker v. Horn, 385 F.3d 321, 332 (3d Cir. 2004) (physician under contract to treat inmates acted under color of state law); Burke v. North Dakota Dept. of Corrections & Rehabilitation, 294 F.3d 1043, 1044 (8th Cir. 2002) (plaintiff stated a claim for relief under § 1983 against medical-services contractor for North Dakota inmates; corporation acting under color of state law can be liable under § 1983 for its own policies if such policies are unconstitutional).[1]

---

[1]Similarly, hiring a private contractor to provide essential services for prisoners in State custody does not absolve the State of responsibility for unconstitutional prison conditions. See, e.g., West v. Atkins, 487 U.S. 42, 56 (1988): "Contracting out prison medical care does not relieve the State of its constitutional duty to provide adequate medical treatment to those in its custody, and it does not deprive the State's prisoners of the means to vindicate their Eighth Amendment rights. The State bore an affirmative obligation to provide adequate medical care to West [the plaintiff]; the State delegated that function to respondent Atkins [the medical contractor]; and respondent voluntarily assumed that obligation by contract." (Footnote omitted.)

Although the CMS/CCS defendants refer to themselves as "private," they, in fact, have been performing a public function under color of state law. "Under the Supreme Court's 'public function' test, a private entity acts under color of state law 'when that entity performs a function which is traditionally the exclusive province of the state.'... The

**Summary Judgment Motions / Continuance**

In response to the DCS defendants' Motion for Summary Judgment (filing no. 96), the plaintiff moves to continue the DCS defendants' motion so that he may amend the complaint, complete discovery, add and delete parties in light of the plaintiff's transfer from TSCI to NSP, and evaluate appropriate remedies (filing no. 99). Similarly, in filing no. 107, the plaintiff requests a continuance to respond to the summary judgment motion filed by the medical providers, Williams, Galatis and Thomas. For the reasons raised by the plaintiff and others discussed below, I will grant filing nos. 99 and 107. I will deny the pending motions for summary judgment, without prejudice to reassertion after the plaintiff has amended his complaint and the parties have completed discovery, except that in this Order, I will grant partial summary judgment as to those matters raised in filing no. 96 which must be granted as a matter of law.

**Individual and Official Capacity**

While the plaintiff stated that he intended to sue all defendants in their individual and official capacities, he served the defendants with process in their official capacity only. Service occurred before the court appointed counsel for the plaintiff. Thus, an Amended Complaint will be useful to clarify the capacity or capacities in which each defendant is sued. In response to the Amended Complaint and after any additional service of process, a defendant sued in his or her individual capacity may then assert a defense of qualified

---

Supreme Court has explained that 'when private individuals or groups are endowed by the State with powers or functions governmental in nature, they become agencies or instrumentalities of the State and subject to its constitutional limitations.'... Thus, the Supreme Court has found private actors to be susceptible to suit under § 1983 .... [such as when] a private doctor under contract with a state prison to provide medical care to prisoners acted under color of state law when he treated [an] inmate." Rosborough v. Management & Training Corp., 350 F.3d 459, 460 (5th Cir. 2003). Accordingly, the State does not shed its duty to maintain constitutional conditions of confinement by hiring a private contractor to undertake state responsibilities, and the private contractor, also, acting under color of state law, takes on obligations under the Constitution to which it must adhere.

Ironically, a physician may sometimes be considered a "state actor" for purposes of 42 U.S.C. § 1983, but not a "state employee" for purposes of the Nebraska State Tort Claims Act and the Act's prerequisites for state-law negligence claims. Smith v. Clarke, Nos. 05-2773/3163, slip op. at 6-8 (8th Cir. August 7, 2006).

immunity, if appropriate.

**No Damages - Official Capacity**

The Eleventh Amendment to the U.S. Constitution bars claims for monetary relief by private parties against a state, a state agency or an employee of a state in his or her official capacity. See, e.g., Edelman v. Jordan, 415 U.S. 651, 663 (1974) ("a suit by private parties seeking to impose a liability which must be paid from public funds in the state treasury is barred by the Eleventh Amendment."). The Eleventh Amendment prevents the plaintiff from recovering damages pursuant to 42 U.S.C. § 1983 from state employees in their official capacity because a suit against a public employee in his or her official capacity is considered a suit against the public employer. Kentucky v. Graham, 473 U.S. 159, 165 (1985).

Consequently, the plaintiff cannot recover damages from any of the DCS defendants in their official capacity because claims against State employees in their official capacity are, as a matter of law, claims against the State, barred by sovereign immunity. "States and state officers acting in their official capacity are immune from suits for damages in federal court." Buckhannon Bd. and Care Home, Inc. v. West Virginia Dept. of Health & Human Resources, 532 U.S. 598, 609 (2001) (citation omitted). As to filing no. 96, partial summary judgment is granted in that regard.

**Prospective Injunctive Relief**

The doctrine of Ex Parte Young, 209 U.S. 123 (1908), holds that the Eleventh Amendment does not bar suits for prospective injunctive relief against state officials in their official capacity. A suit to enjoin state officials in their official capacity may proceed if the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective, although a declaratory judgment establishing past liability of the State is nevertheless forbidden by the Eleventh Amendment. Verizon Maryland, Inc. v. Public Service Com'n of Maryland, 535 U.S. 635, 646 (2002).

However, any claim the plaintiff might have had for prospective injunctive relief against the defendants who worked at TSCI or who have left DCS employment altogether became moot when the plaintiff transferred to NSP. "A claim for equitable relief is moot 'absent a showing of irreparable injury, a requirement that cannot be met where there is no

showing of any real or immediate threat that the plaintiff will be wronged again.'" Randolph v. Rodgers, 170 F.3d 850, 856-57 (8th Cir. 1999). When, as in this case, "an inmate has been transferred to another institution, his claim for injunctive relief against the warden of the first prison to improve the former prison's conditions is moot." Id. at 857, *citing* Martin v. Sargent, 780 F.2d 1334, 1337 (8th Cir. 1985).

Accordingly, the plaintiff cannot obtain prospective injunctive relief involving Fred Britten, the Facility Administrator at TSCI, Dr. Richard Elliott, who retired on July 18, 2005, and Physician's assistant Steve Lemar, who has left DCS. As to filing no. 96, partial summary judgment is granted in that regard.

**Supervisory Liability**

Frank Hopkins serves as the DCS Assistant Director of Institutions, and Dr. Randy Kohl is the DCS Medical Director. Those defendants can be liable to the plaintiff *only* through some personal responsibility for the infliction of constitutional injury on the plaintiff. "To establish the liability of a supervisory official under § 1983, a plaintiff must show the defendant's personal involvement in the alleged constitutional violations." Richardson v. Goord, 347 F.3d 431, 435 (2d Cir. 2003) (citations omitted).

Supervisory or administrative personnel cannot be liable to the plaintiff under the federal civil rights laws based merely on principles of vicarious liability or respondeat superior for constitutional injuries allegedly inflicted by their subordinates or other persons. See, e.g., Monell v. New York City Dept. of Social Services, 436 U.S. 658, 694, (1978); Shrum ex rel. Kelly v. Kluck, 249 F.3d 773, 778 (8th Cir. 2001), *citing* Board of County Commissioners of Bryan County, Oklahoma v. Brown, 520 U.S. 397, 405 (1997) and City of Canton v. Harris, 489 U.S. 378, 385 (1989): "Rigorous standards of culpability and causation must be applied to ensure that [an employer] is not held liable solely for the actions of its employees .... The purpose of such a stringent standard is to prevent § 1983 liability from collapsing into state tort law or into respondeat superior liability, an intent not contemplated by § 1983."

The plaintiff is entitled to undertake additional discovery in order to evaluate whether to pursue claims against the supervisory defendants. However, as to filing no. 96, partial summary judgment is granted insofar as any claims against Hopkins and Kohl may be

founded on vicarious liability or principles of respondeat superior.

**Involuntary Medication**

The fundamental problem in this case, as I see it, is that Mr. Jones has lost all faith in the DCS medical personnel who have been treating his medical conditions. As a consequence of his distrust of the medical staff, the plaintiff stopped taking all of his medications on February 1, 2005. Shortly thereafter, the plaintiff filed this lawsuit, and 11 months later, I appointed the attorney of his choice to represent him.

For a man of Mr. Jones' age and condition, abrupt cessation of medications, particularly for high blood pressure, can be fatal or, at a minimum, can lead to debilitating conditions such as stroke, heart attack, and severe stress on his internal organs. As long ago as March 22, 2005, Magistrate Judge F. A. Gossett expressed dismay at the plaintiff's decision to stop taking blood pressure medicine (see Order on Initial Review, filing no. 16 at n.2).

The record indicates that DCS personnel also feared for the plaintiff's safety. Unfortunately, there is evidence in the record that encounters between the plaintiff and a clinical psychologist at TSCI, Dr. Sell, exacerbated the communication problems between the plaintiff and TSCI medical personnel. Thus, it may prove to be beneficial that the plaintiff has moved to the NSP.

On December 22, 2005 and January 5, 2006, a hearing convened at TSCI regarding the administration of psychotropic medication to the plaintiff without his consent. The hearing resulted in a decision to administer the medications for a six-month period. Filing no. 62, the Motion for TRO filed on December 20, 2005, by the plaintiff pro se, and filing no. 78, the Motion for Preliminary Injunction filed on January 26, 2006, by the plaintiff through his recently appointed attorney, sought to enjoin the involuntary medication.

The court has reviewed the monthly reports of the involuntary medications administered to the plaintiff, and, it appears that no involuntary psychotropic medication has been administered to the plaintiff during or after the month of May 2006 (filing no. 88). Therefore, the status of the plaintiff's claim, if any, regarding the involuntary medication should be clarified in the Amended Complaint. In the meantime, filing nos. 62 and 78 are denied as moot.

**Exactly Which Medical Conditions/Treatments Are At Issue**

A prisoner's Eighth Amendment rights are violated if prison officials show "deliberate indifference" to the prisoner's "serious medical needs." Olson v. Bloomberg, 339 F.3d 730, 735 (8th Cir. 2003), *citing* Estelle v. Gamble, 429 U.S. 97, 106 (1976).  "[D]eliberate indifference is akin to criminal recklessness, which demands more than negligent misconduct." Id. at 736.  To establish deliberate indifference, a prisoner must prove he had objectively serious medical needs, and the defendant(s) actually knew of, but deliberately disregarded, those needs.  Meloy v. Bachmeier, 302 F.3d 845, 849 (8th Cir. 2002).

The plaintiff has complained of multiple impairments to his health, including hypertension, a wound to his head, an injury to his hand, growths and fungi on his feet, frequent urination, prostate problems, gout, and symptoms of or akin to cardiac arrhythmia or infarction.  To determine the liability of each defendant for an Eighth Amendment claim of deliberate indifference, the conduct of each defendant must be analyzed separately as to each of the plaintiff's impairments.  Each defendant is entitled to know what he or she is accused of having done to injure the plaintiff.  Also, not every impairment necessarily qualifies as "serious" within the meaning of Eighth Amendment jurisprudence.

In order to find a defendant liable for an Eighth Amendment violation, the plaintiff must establish that (1) a substantial risk of serious harm to the plaintiff existed by virtue of the particular condition and (2) the defendant knew of and disregarded that risk.  Robinson v. Hager, 292 F.3d 560, 564 (8th Cir. 2002), *citing* Farmer v. Brennan, 511 U.S. 825, 837 (1994)  Therefore, in the Amended Complaint, the plaintiff shall clarify which of his medical conditions he asserts were the subject of past Eighth Amendment violation(s), which are the subject of present constitutional violation(s), and which defendant(s) were, and/or are, responsible for each such violation.

**Plaintiff's Counsel/Remedies**

I appointed counsel for the plaintiff and then substituted the specific attorney requested by the plaintiff, a highly unusual procedure, because I hoped that much of the plaintiff's consternation about his medical care could be alleviated by explanation, discussion and negotiation.   Before the appointment of counsel, the plaintiff had filed a series of motions for medical tests, for visits to doctors outside of DCS, for information

about his medications and possible side effects, and even to compel the doctors and nurses to let him "see the label on medication they are trying to force me to take" (filing no. 58).  The plaintiff expressed increasing agitation and distress because, at least in part, he believed he was being denied important information about his medications and treatment.

Once the communication between prison personnel and the plaintiff deteriorated so completely as to result in involuntary administration of psychotropic medication, someone in whom the plaintiff had confidence had to enter the picture.  Mr. Knoblauch, the plaintiff's attorney, is that person.  I am hopeful that Mr. Knoblauch can help to restore the plaintiff's willingness to accept medical treatment at the NSP for his conditions, whether or not the plaintiff receives an outside consultation.

As for the equipment that the plaintiff seeks to purchase and maintain in his cell, Mr. Knoblauch can negotiate whatever can reasonably be negotiated.  For example, while I do not prejudge the issue, I doubt that the U.S. Constitution entitles the plaintiff to a wrist blood pressure monitor.  However, if the plaintiff pays for a monitor as he has requested, and if he accepts the necessity of allowing prison medical staff to monitor his blood pressure with their own equipment at regular intervals, prison officials may wish to permit the plaintiff to have a wrist monitor.  The plaintiff must understand that prisons have rules and prison administrators must guard against the appearance of favoritism and special treatment.  So the plaintiff may not be able to acquire everything he wants.  Mr. Knoblauch will obtain for the plaintiff whatever the law requires, as well as whatever the defendants are willing, beyond what is required, to allow the plaintiff.  I am hopeful that discussion among counsel may be productive in achieving for the plaintiff as much of what he wants as can be approved without disruption to the administration of the NSP.

**Motion to Compel, Join Party, Incur Expense**

In filing no. 91, the plaintiff requests leave to incur expenses for, and schedule a medical examination of, the plaintiff, as set forth in the motion.  This is a matter more appropriately considered after the Amended Complaint has been filed, discovery has resumed, and the court has been educated as to the plaintiff's present condition.  Therefore, the plaintiff may renew the motion after the defendants have responded to the Amended Complaint.  Such a renewed motion may be an appropriate matter for the parties

to discuss in a planning conference with Magistrate Judge Gossett once the issues have been clarified by the amended pleadings.

In the last part of filing no. 91, the plaintiff requests leave to join DCS as a party. However, for all practical purposes, DCS is a party to this litigation, and the plaintiff has already received that part of the relief he seeks in filing no. 91. DCS, as a state agency or subordinate unit of state government, is synonymous with the State of Nebraska for purposes of litigation such as this. Similarly, as previously discussed, each defendant in this case, in his or her *official* capacity is, as a matter of law, considered the equivalent of the State of Nebraska. Any order of prospective injunctive relief imposed in this case on an employee of DCS would be effective as to the respective employee in his or her official capacity, DCS and the State, interchangeably.

THEREFORE, IT IS ORDERED:

1. That filing no. 62, the Motion for Temporary Restraining Order ("TRO") filed by the plaintiff, Isiah J. Jones, is denied;

2. That filing no. 78, the plaintiff's Motion for Preliminary Injunction, is denied;

3. That filing no. 91, the plaintiff's Motion to Compel, Motion to Join Party, and Application for Authorization to Incur Expense, and filing no. 94, the defendants' Objection to filing no. 91, are granted in part and denied in part as follows:

   a. The Motion to Compel and to Incur Expense is denied at this time, subject to renewal once the issues have been clarified by the amended pleadings;

   b. The Motion to Add Party is granted, as DCS is effectively already a party to this litigation for purposes of prospective injunctive relief;

4. That filing no. 96, the Motion for Summary Judgment filed by the DCS defendants is granted in part and denied in part as follows:

   a. Filing no. 96 is granted in that: The plaintiff cannot recover damages from any of the DCS defendants in their official capacity; the plaintiff cannot recover prospective injunctive relief involving Fred Britten, the Facility Administrator at TSCI, Dr. Richard Elliott, who retired on July 18, 2005, and Physician's assistant Steve Lemar, who has left DCS; the plaintiff cannot recover any relief as to Frank Hopkins or Dr. Randy Kohl to the extent the

9

        plaintiff's claims against those defendants are founded on principles of vicarious liability or respondeat superior; and

    b.    In all other respects, filing no. 96 is denied, without prejudice to reassertion of a summary judgment motion after the plaintiff has filed an Amended Complaint, the defendants have responded, and the parties have completed discovery;

    5.    That filing no. 99, the plaintiff's Motion to Continue Defendants' Motion for Summary Judgment is granted as set forth in this Memorandum and Order;

    6.    That filing no. 102, the Motion for Summary Judgment filed by defendants-Janssen Williams, M.D., Kris Galatis and Dave Thomas, is denied at this time, without prejudice to reassertion of a summary judgment motion after the plaintiff has filed an Amended Complaint, the defendants have responded, and the parties have completed discovery;

    7.    That filing no. 107, the plaintiff's Motion for Extension of Time to File Opposition to filing no. 102 is granted in that filing no. 102 has been denied without prejudice to reassertion after the plaintiff has filed an Amended Complaint, the defendants have responded, and the parties have completed discovery; and

    8.    That Magistrate Judge F. A. Gossett is requested to enter a Progression Order setting a schedule for matters including the amendment of pleadings, completion of discovery, filing of motions and such planning conference(s) as the parties may consider helpful.

August 10, 2006.        BY THE COURT:

                                    s/ *Richard G. Kopf*
                                    United States District Judge